IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

HENRY JOINER, #140 755                    *

      Plaintiff,                              *

           v.                             *        2:09-CV-243-TFM
                                                     (WO)

ASSISTANT WARDEN MASON, *et al.*,         *

      Defendants.                             *

_____

## MEMORANDUM OPINION

This 42 U.S.C. § 1983 action concerns a dispute over the provision of medical care and treatment provided to Plaintiff, a state inmate incarcerated at the Bullock Correctional Facility ["Bullock"]. The defendants named to this action include Assistant Warden Rene Mason, Dr. Tahir Siddiq, Nurse Wilma Nalls, and Danny Gould, Medical Director for Correctional Medical Services, Inc.   Plaintiff seeks damages and injunctive relief.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief.   Pursuant to previous orders of this court, the undersigned deems it appropriate to treat this report as a motion for summary judgment. (*See Doc. No. 19.*)   Thus, this case is now pending on Defendants' motion for summary judgment.   Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition to the motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

# I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

genuine dispute of material fact.  Thus, the burden shifts to Plaintiff to establish, with

appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324;

Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact by [citing to materials in the record

including affidavits, relevant documents or other materials] the court may ... grant summary

judgment if the motion and supporting materials -- including the facts considered undisputed

-- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the

nonmoving party produces evidence that would allow a reasonable fact-finder to return a

verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment.  In respect to the latter, our inferences must accord
> deference to the views of prison authorities.  Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive Defendants' properly supported motion for

summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claims of constitutional violations.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.

"If the evidence [on which the nonmoving party relies] is merely colorable ... or is not

significantly probable ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987)

4

(If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings,

evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, 475 U.S. at 587.

## II.  DISCUSSION

*A. Background*

Plaintiff filed this civil rights lawsuit on  March 25, 2009, asserting numerous complaints arising from several years of alleged unsatisfactory medical care.  Plaintiff is a "three strikes" inmate.  *See* 28 U.S.C. § 1915(a).  Pursuant to the directives of 28 U.S.C. § 1915(g),  a prisoner is not allowed to bring a civil action or proceed on appeal *in forma pauperis* if he "has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds

that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."   In order to meet the imminent danger requirement of 28 U.S.C. § 1915(g), a plaintiff must allege a physical injury that is imminent or occurring at the time the complaint is filed, and the threat or prison condition causing the physical injury must be real and proximate. *See Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir. 2003).  "[A] prisoner's allegation that he faced imminent danger sometime in the past is an insufficient basis to allow him to proceed in forma pauperis pursuant to the imminent danger exception to the statute." *Medberry v. Butler,* 185 F.3d 1189, 1193 (11th Cir. 1999).

In the complaint, Plaintiff alleged, among other things, that  medical conditions associated with back and neck pain were causing him severe extreme pain and suffering, he was not receiving adequate care and treatment for said conditions, and the actions of medical personnel were causing his medical condition to worsen and possibly result in a lifelong handicap or permanent injuries.  To narrow the proper claims before the court, Plaintiff was directed to file an amended complaint, which superceded the original complaint,  limiting his claim to allegations concerning his present inability to obtain adequate medical care for his current spinal conditions and attendant back pain and identifying the individual(s) responsible for refusing him care.  Upon review of Plaintiff's amended complaint, the court determined that Plaintiff satisfied the threshold criterion of the imminent danger of serious physical injury exception and allowed him to proceed *in forma pauperis* in this lawsuit, but

only as to his claims for deliberate indifference concerning the current state of his health and the alleged inadequate response to those health conditions by medical personnel. *See Ciarpaglini* 352 F.3d at 331 (the inquiry under § 1915(g) is "not a vehicle for determining the merits of a claim."). Consequently, any other claims asserted/argued by Plaintiff in this lawsuit are not before the court and will not be addressed.

A. The Eighth Amendment Claim

    Plaintiff alleges that the named defendants have failed to provide him with adequate medical care and treatment for back and neck pain. Specifically, Plaintiff claims that Defendants have subjected him to delays in regard to examinations by free world physicians for diagnosis and treatment of chronic degenerative disc disease, failed to provide proper treatment for previously diagnosed medical needs, failed to provide him with appropriate and/or prescribed medication, and generally acted with deliberate indifference to his serious medical needs by failing to provide appropriate medical treatment. Plaintiff claims that as a result of the inadequate medical care he has received from Defendants, he is likely to experience future injury, permanent losses, emotional and mental distress, and be subjected to lifelong handicaps. (*Doc. No. 6.*)

    To prevail on a claim concerning an alleged denial of adequate medical treatment in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his health. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.").  When seeking relief based on deliberate indifference of prison correctional and medical personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

In articulating the scope of inmates' right to be free from deliberate

indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."  *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind." ' " *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  Thus, to survive summary

judgment on his claim of deliberate indifference, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) Defendant's deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Dr. Siddiq currently practices medicine at Bullock Correctional Facility. He examined Plaintiff in January 2008 for his complaints of neck, hand, and arm pain and initially decided on a conservative approach in response to Plaintiff's complaints.[2] The physician prescribed Plaintiff medication to address pain issues. In response to Plaintiff's continued complaints of back, neck, and shoulder pain in March 2008, Dr. Siddiq requested information concerning Plaintiff's medical history. This medical history consisted of a radiology report from an MRI of Plaintiff's cervical spine taken in July 2005. The radiologist's impression of the MRI reflected that Plaintiff had: 1) advanced generalized pattern of severe multi-level degenerative disc disease associated with defuse cervical spinal stenosis, multi-level disk herniations, multi-level foraminal stenosis, and cervical spondelosis; 2) central and left-sided disk herniation, C4-C5; 3) large broad-based disk herniation C5-C6; and 4) large central and right-sided disk herniation, C6-C7 and C7-T1. Plaintiff's medical history also contained a report from a physician with Montgomery Neurological Associates prepared in October 2005 which indicated disc herniation at C4-5,

---

[2] Plaintiff arrived at the Bullock Correctional Facility on or about November 16, 2007. (*Doc. No. 11, Exh. B*.)

C5-6 and right-sided disc herniation at C7-T1.  The treating physician recommended conservative treatment and ordered a cervical epidural steroid block series for Plaintiff. The physician further recommended three weeks of cervical PT [physical therapy], over the door cervical traction, and 800 mg. Motrin (*Doc. No. 11, Exh. A, B*.)

Plaintiff submitted a sick call slip on April 4, 2008 complaining of back, neck, shoulder, and body pain and stating that although he had been seen by a doctor twice within two weeks  he had not received anything to address those problems.  Plaintiff was a "no show" for screening scheduled on April 7, 2008.  On May 2, 2008 medical personnel examined Plaintiff in response to his complaint of spine, neck, and joint pain and needing medication for a cold.   On May 6, 2008 correctional personnel escorted Plaintiff to the health care unit for a body chart.   Plaintiff claimed to be unaware of why he was there. Medical personnel found Plaintiff to have no injuries and he denied having any.[3]  On May 7, 2008 medical personnel treated Plaintiff for a fever blister.  (*Doc. No. 11, Ehxs. A, B*.)

Dr. Siddiq requested a MRI of Plaintiff's cervical spine.  Dr. Timothy Holt, a free world orthopedic surgeon, examined Plaintiff and on May 15, 2008 and recommended that surgery be performed on Plaintiff's cervical spine. Plaintiff underwent the following procedures on June 18, 2008: 1) interior cervical discectomy and fusion C4-5, with implantation of PEEK spacers; 2) inter-body fusion C4-5, C5-6, 3) interior cervical plating;

---

[3]In the pleadings before the court, Plaintiff indicates that on May 6, 2008 two correctional officers assaulted him which greatly exacerbated his back and neck problems.  (*Doc. Nos. 21, 22*.)

and 4) discectomy with Foraminotomies C4-5, C5-6.  At a post-op exam with Dr. Holt on July 1, 2008, the physician made another appointment to see Plaintiff in three weeks. During his examination of Plaintiff on July 31, 2008, Dr. Holt recommended an MRI of Plaintiff's lumbar spine which he received on August 21, 2008.   At a follow-up appointment on September 11, 2008 Dr. Holt recommended that Plaintiff undergo a discogram.[4] (*Doc. No. 11, Exhs. A, B.*)

Between October 2008 and January 2009, Plaintiff's medical records show that medical personnel examined and treated him for his ongoing complaints related to back and neck pain as well as for other unrelated medical and dental conditions.   On February 3, 2009 medical personnel submitted a consultation request for the discogram recommended by Dr. Holt.  Dr.  Hewick performed a discogram on Plaintiff on February 26, 2009. Dr. Holt examined Plaintiff on April 2, 2009 at which time he recommended that Plaintiff receive a fusion of the L2-S5 level.  Prison medical personnel submitted consultation requests for the suggested surgery.  (*Doc. No. 11, Exhs. A, B.*)

Following approval of the fusion surgery, Plaintiff was scheduled for surgery on April 21, 2009. On the eve of the surgery, Defendants assert that Plaintiff refused to be taken to the hospital after correctional officials informed him that he would not be allowed

---

[4]A discogram is a test used to evaluate back pain. During a discogram, dye is injected under low pressure into the center of several spinal disks. An X-ray or CT scan is then taken to determine if the disks are damaged. *Available at http://www.mayoclinic.com/health/.*

to take his legal documents and pleadings with him.  Dr. Siddiq affirms that the surgical

procedure, however, is still available to Plaintiff.[5]  (*Doc. No. 11, Exhs. A, B*.)

The court has carefully reviewed Plaintiff's opposition to Defendants' dispositive

motion and finds that Plaintiff makes mostly generalized and conclusory allegations that

Defendants,  in response to his medical needs,  have exhibited deliberate indifference,

shown reckless disregard, conspired to overrule the decisions and/or recommendations of

medical experts concerning Plaintiff's needs for surgery, and subjected him to intentional

mistreatment.[6]   He further argues that: 1) denials of prompt surgery caused him to suffer

---

[5]On March 10, 2010 the court directed Defendants to respond to Plaintiff's request for  a preliminary injunction wherein Plaintiff complained that he still was not receiving adequate medical care which was causing his health to decline.  The medical records submitted in support of Defendants' response  reflect that subsequent to postponement of the April 21, 2009 surgery, the procedure was rescheduled for June 3, 2009. At that time,  Dr. Timothy Holt performed the following surgical procedures on Plaintiff: 1) an anterior lumbar intrabody fusion, L5-S1; 2) implantation of spacer, L5-S1; 3) an anterior screw fixation through plate L5-S1; and 4) a posterior removal of ostephytes and formaninotomies/partial vertebrectomy, S-1 and L-5. Following his surgery, Plaintiff received rehabilitation at the Kilby Correctional Facility and  was then returned to  Bullock. Dr. Holt saw Plaintiff again on October 8, 2009 for his continued complaints of pain. Dr. Holt did not recommend any further surgery and advised Plaintiff to follow up with him if necessary. Dr. Holt examined Plaintiff again on March 4, 2010 and noted he had developed Pseudoarthosis at the L5 -S1 post-surgery. The physician recommended surgery for the L5 - S1 subluxation which was ordered and approved.  (*Doc. No. 38, Siddiq Affidavit and Plaintiff's Medical Records*.)

[6]This matter is before the court on the allegations presented in Plaintiff's amended complaint filed on April 14, 2009, and thus, to the extent Plaintiff presents new claims for relief or factual allegations, additional defendants, and/or additional theories of liability in his opposition to Defendants' dispositive motion, such claims are not properly before the court nor did  the court consider Plaintiff's opposition as an amendment to his complaint. *See Chavis v. Clayton County Sch. Dist*., 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) ("Chavis advanced this contention in his brief to the district court in response to the defendants' motion for summary judgment. Chavis did not seek to amend his complaint to add a claim based on the asserted conduct, and the district court did not specifically address this contention . . . We do not regard this kind of claim as properly before us . . ."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (cited with approval in *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("As a final matter, Shanahan's attempt to amend his complaint by way of a footnote in his response to defendants' motion for summary judgment was properly denied by the district court. A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

"paralysis damages" and "losses" to his upper body; 2) more damages and permanent losses to his lower body were likely discoverable following his surgery performed in June 2009; 3) Defendants placed the financial interests of the State ahead of providing adequate and timely medical care and treatment for his serious medical needs; 4) Defendants only sent him to outside specialists where new medical problems would show that they denied and delayed necessary medical treatment; 5) Defendants failed to meet his needs for medical care from May 2008 to March 2009 and only prescribed him pain medication which exacerbated his stomach problems because he had been taking the medications for four years; and 6) Defendants cancelled all free world medical appointments from October 2008 to February 2009 which is when he filed the instant lawsuit.  Plaintiff further asserts that Defendants cancelled his surgery scheduled for April 21, 2009 after he refused to "make a deal" with them to "alter his possition [sic] in the civil suit against them."[7]   (*Doc. Nos. 21, 22; see also Doc. Nos. 64, 79*.)

The court has carefully reviewed the evidentiary material before the court and finds that this material demonstrates without dispute that Plaintiff has received extensive medical care and treatment for his complaints of pain associated with his neck and back problems and has also been prescribed various medications designed to alleviate and/or control the amount of pain associated with these conditions.  There is simply no evidence of any

---

[7]The court notes that this claim occurred after Plaintiff filed his amended complaint on which this case is proceeding.

failure to provide medical care and treatment to Plaintiff pursuant to his requests for the same or dispense ineffective or contraindicated prescriptions for his various medical issues. While evidence exists in Plaintiff's medical records that he occasionally failed to show up at scheduled sick call appointments and/or was not always compliant with taking prescribed medication, there is no evidence that Defendants cancelled Plaintiff's medical appointments, whether made at the institution or in the free world, in order to intentionally deny and/or delay the provision of medical care nor do Plaintiff's medication records show a failure to provide prescribed medications.  Rather, the medical evidence reflects that Defendants have seen, evaluated, and treated Plaintiff on an ongoing and regular basis since his incarceration at the Bullock Correctional Facility with respect to not only his complaints of back and neck pain but his complaints regarding other medical and dental issues as well. Plaintiff has also been treated and examined numerous times by free world medical specialists with regard to his back and neck conditions. While Plaintiff claims that Defendants delayed his ability to receive surgery until new problems surfaced and claims that delays in his receipt of surgery caused "paralysis damages" and "upper body losses," he fails to provide any medical evidence to support such allegations much less that they resulted from any deliberate indifference on the part of Defendants.  Finally, absent from the evidentiary material  before the court are any indicators that decisions regarding Plaintiff's medical care were impacted by financial considerations. Rather, on the whole, the evidence in this case, in the form of Plaintiff's voluminous medical records,

Defendants' affidavits, as well as Plaintiff's own pleadings and evidentiary material, clearly demonstrate that his medical needs associated with his back and neck problems have been continuously and timely addressed by Defendants as well as other prison and free world  medical providers, even if not according to Plaintiff's own demands and expectations. Other than Plaintiff's generally conclusory assertions regarding Defendants' conduct and actions in response to his medical conditions, he presents no probative summary judgment evidence tending to demonstrate any deliberate indifference on the part of the named  Defendants.[8]

To the extent Plaintiff's claims against Defendants reflect his disagreement with the extensive medical care he has received, he is entitled to no relief. His perception regarding the efficacy of his treatment and his desire for different or additional treatment  does not establish a constitutional violation. *Hamm v. DeKalb County*, 774 F.2d. 1567, 1575 (11th Cir. 1985).  At best, Plaintiff provides the court with no more than his own unsubstantiated beliefs and opinions about the caliber, appropriateness, efficaciousness, and timeliness  of

---

[8]Plaintiff maintains that Defendants failed to transport him to a free world hospital for previously scheduled back surgery on April 21, 2009 because he refused to make a "deal" with them "to alter his position in this civil suit against them." (*See Doc. No. 21.*)  This claim arose subsequent to the filing of the amended complaint on which this case has been allowed to proceed.  The evidence before the court, however, fails to support any inference of an improper motive by Defendants in relation to the cancellation of Plaintiff's surgery initially scheduled for April 21, 2009. (*See Doc. No. 49, Exh. A; see also Doc. No. 11, Exh. B at pg. 88.*)  Plaintiff subsequently underwent the surgery originally scheduled for April 21, 2009 on June 3, 2009.  (*See Doc. No. 38, Siddiq Affidavit and Medical Records.*)  The court finds that no verifying medical evidence exists in the record tending to establish any detrimental effect of the delay in Plaintiff receiving surgery on June 3, 2009 rather than on April 21, 2009.  *See Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1188 (11th  Cir. 1994).

the medical care he received.  *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Franklin v. Oregon,* 662 F.2d 1337, 1344 (9th Cir. 1981) (medical personnel do not violate the Constitution simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Such unsupported beliefs and opinions are insufficient to create a genuine dispute and certainly do not do so in this case. He has no constitutional right to  specific medical treatment on demand simply because he thinks he needs a certain procedure  nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care."). Additionally, any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.  *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1188 (11th Cir. 1994).  Plaintiff has failed to produce verifying evidence tending to establish any detrimental effect of delay in providing medical services or medical care to Plaintiff while he has been incarcerated at the Bullock Correctional Facility. Plaintiff's failure to verify his claims with medical or scientific evidence is fatal to it.

Under the circumstances of this case, it is clear that the course of treatment undertaken by the medical defendants was neither grossly incompetent nor inadequate. The unrefuted medical records shows that Plaintiff has received extensive and regular medical

18

examinations and treatment by prison medical personnel as well as free world specialists and surgeons. Plaintiff's challenges to the chosen course of treatments do not, under the facts of this case, amount to deliberate indifference. *Harris,* 941 F.2d at 1505; *Hamm,* 774 F.2d at 1575; *Garvin,* 236 F.3d at 898; *Franklin,* 662 F.2d at 1344. Plaintiff's medical records, along with Defendants' affidavits, provide probative summary judgment evidence that Plaintiff's medical conditions have not been ignored or intentionally mistreated. Nor does the evidence before the court show any wanton disregard for or deliberate indifference to Plaintiff's medical needs nor has he has come forward with any evidence that Defendants knew that the manner in which they treated hin created a substantial risk to him and that they disregarded that risk. *Farmer*, 511 U.S. at 837. It is undisputed that Plaintiff has received, and continues to receive, medical care and treatment for his complaints of back and neck pain as well as follow-up care with prison medical personnel and free world medical providers. Plaintiff has not shown by medical evidence consistent with FED. R. CIV. P. 56(e), that the treatment he received was so deficient as to amount to deliberate indifference in violation of the Eighth Amendment. Nor has Plaintiff shown that the treatment decisions made by Defendants reflects a substantial departure from accepted professional judgment, practice, or standards which tends to show that they did not make decisions based on such judgments. *See Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). Consequently, Plaintiff has failed to establish a genuine issue about deliberate indifference on the part of Defendants. In the absence of such a showing by Plaintiff, Defendants'

motion for summary judgment shall be granted.

B.  *The Exercise of Supplemental Jurisdiction*

To the extent Plaintiff's complaint may be considered to contain a claim that the medical care and treatment provided to him by Defendants implicates the  state tort of medical malpractice, review of such a claim is only appropriate upon exercise of this court's supplemental jurisdiction.  *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").   In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'"  *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).   The exercise of supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428.   In view of this court's resolution of the federal claim presented in the complaint, Plaintiff's supplemental state tort claim shall be dismissed.  *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### III.  CONCLUSION

For the foregoing reasons, it is ORDERED that:

1.   All remaining pending motions (*Doc. Nos. 89, 90, 92*) be and are hereby DENIED;

2.   Defendants' motion for summary judgment (*Doc. No. 11*) is GRANTED with respect to Plaintiff's federal claim;

3.   Plaintiff's pendent state law claims are DISMISSED without prejudice;

4.   Judgment is GRANTED in favor of Defendants and against Plaintiff;

5.   This case is DISMISSED with prejudice; and

6.   The costs of this proceeding are TAXED against Plaintiff for which execution may issue.

A separate Order follows.

Done, this 23rd day of May 2011

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

21